J-S75039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS VERNON BARCHFELD, | : | |
| | : | |
| Appellant | : | No. 836 WDA 2017 |

Appeal from the Judgment of Sentence February 17, 2017
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s):  CP-02-CR-0009273-2014

BEFORE:  SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED JANUARY 18, 2018**

Thomas Vernon Barchfeld ("Barchfeld") appeals from the judgment of sentence imposed following his convictions of one count of terroristic threats and four counts of harassment.  *See* 18 Pa.C.S.A. §§ 2706(a)(1), 2709(a)(4).  We affirm.

The trial court set forth the relevant underlying facts as follows:

Martin Schmotzer [("Schmotzer")] testified that on May 23, 2014, between 5:30 and 6:00 a.m., he noticed that his answering machine was flashing.  [N.T., 12/19/16, at 11-12.] Schmotzer looked at the caller ID and read the name [] Barchfeld, along with [Barchfeld's] phone number.  [*Id.* at 12.] Schmotzer listened to the recording multiple times, and said that in the message [Barchfeld] identified himself and "rambled" about how "his rights were taken away."  [*Id.* at 13.] Schmotzer testified that [Barchfeld] made a second phone call to Schmotzer between 9:00 and 11:00 p.m. and left another message on the answering machine.  [*Id.* at 15.]  In the second message, [Barchfeld] stated that he had been reasonable, but now it was time to be unreasonable.  [*Id.* at 16.]  [Barchfeld] further stated that his First Amendment rights had been infringed upon and he was going to exercise his Second

Amendment rights. [*Id.* at 16-17.] Schmotzer believed [Barchfeld] was capable of acting on the statement and stated that he felt worried for the safety of his wife and daughters. [*Id.* at 17.]

Sergeant Jason Gagorik [("Sgt. Gagorik")] of the Whitehall Police Department testified that he spoke with [Barchfeld] at approximately 7:05 a.m. on May 23, 2014. [*Id.* at 26.] Sgt. Gagorik stated that [Barchfeld] admitted to making the phone call to Schmotzer, and [Barchfeld] explained that he was expressing his frustration with Schmotzer and the rest of the Baldwin-Whitehall School District School Board regarding the Common Core curriculum. *Id.* [Barchfeld] also indicated that he believed Schmotzer slandered him in a newspaper article. [*Id.* at 27.] Sgt. Gagorik instructed [Barchfeld] not to contact Schmotzer[,] or he would be charged with harassment. *Id.*

Raymond Rosing [("Rosing")] testified that he was also on the school board on May 24, 2014[,] and that he received three phone calls from [Barchfeld] on that day. [*Id.* at 31.] Rosing testified that the first call was at approximately 5:50 a.m. [*Id.* at 32.] Rosing recognized the voice as [Barchfeld's]. *Id.* [Barchfeld] launched into a string of obscenities and Rosing hung up on him. [Barchfeld] immediately called back and said to Rosing: "You took my First Amendment right off me. I'm enforcing my Second Amendment right against you." [*Id.* at 33.] Rosing asked [Barchfeld] if he was threatening Rosing and [Barchfeld] responded, "[y]es. I'm going to shoot you, I'm going to blow you away." *Id.* Rosing had the second call on speaker phone, and his wife was listening to [Barchfeld] with him. [*Id.* at 33-34.] Rosing hung up on [Barchfeld] again. [*Id.* at 33.] [Barchfeld] called back a third time and screamed obscenities at Rosing "at the top of his lungs." *Id.* Rosing hung up and immediately called the police. *Id.* Rosing testified that the phone calls scared him because he didn't know if [Barchfeld] was going to come to his house and shoot him and his wife. [*Id.* at 34.]

Belinda Rosing, [] Rosing's wife, corroborated her husband's testimony. She testified that the phone rang between 5:45 and 6:00 a.m. [*Id.* at 39.] She did not hear the other end of the line on the first call. [*Id.* at 40.] The second call was on speakerphone and she heard the caller say that he was going to "blow him away and shoot him." *Id.* She said the caller

- 2 -

identified himself as "Barchfeld." *Id.* She heard her husband ask if [Barchfeld] was threatening him. [*Id.* at 41.] She testified that [Barchfeld] said, "[y]es, I am. I am going to shoot you and blow you away. Then he brought something about the amendment up, his amendment rights." *Id.* She told her husband to hang up and call the police. *Id.* She testified that she was afraid for her life. *Id.* She described [Barchfeld's] language as "nasty" and said "he was swearing up a storm." [*Id.* at 44.]

Lawrence Pantuso [("Pantuso")], another member of the Baldwin-Whitehall School District School Board, testified that [Barchfeld] left a message on his answering machine on May 23, 2014[,] which Pantuso interpreted as threatening. [*Id.* at 54-57.] Pantuso testified that [Barchfeld] said his First Amendment rights had been violated and then referenced the Second Amendment. [*Id.* at 57.] Pantuso interpreted this statement, along with another statement by [Barchfeld] that he had been reasonable far too long and now it was time to be unreasonable, as a direct threat to his life. *Id.* Pantuso testified that as Board President, he consulted with the school solicitor and the Superintendent and then the solicitor wrote [Barchfeld] a letter on April 7, 2014[,] informing him that he was not to have access to the school district property. [*Id.* at 58-59.] Susan Pantuso [("Susan")] testified that her husband played the message on the machine to her. [*Id.* at 63-64.] She stated that hearing this message made her feel frightened in her home for the first time in her life. [*Id.* at 64.]

Trial Court Opinion, 8/29/17, at 3-5 (citations and some quotation marks omitted).

Barchfeld was arrested and charged with two counts of terroristic threats and five counts of harassment. The case proceeded to bench trial before the Honorable Jill E. Rangos. On February 17, 2017, Judge Rangos convicted Barchfeld of one count of terroristic threats (Rosing) and four counts of harassment (Schmotzer, Pantuso, Susan, Rosing). That same day, the trial court imposed an aggregate sentence of one year of house arrest

and a concurrent probation term of three years. Barchfeld filed a Post-Sentence Motion, and Barchfeld's counsel filed a Motion to Withdraw as Counsel. The trial court denied the Post-Sentence Motion, and granted the Motion to Withdraw as Counsel.

On April 18, 2017, Barchfeld filed a *pro se* Petition pursuant to the Post Conviction Relief Act ("PCRA").[1] The PCRA court appointed counsel, who filed an Amended PCRA Petition, seeking the restoration of Barchfeld's direct appeal rights. The PCRA court granted the Petition and reinstated Barchfeld's direct appeal rights.

Thereafter, Barchfeld filed a timely Notice of Appeal, and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Barchfeld raises the following questions for our review:

1. Whether the evidence was insufficient to support the conviction for terroristic threats under 18 Pa.C.S.[A.] § 2706(a)(1) where the Commonwealth failed to prove beyond a reasonable doubt that (1) [Barchfeld] made a threat to commit a crime of violence and/or (2) any such threat was communicated with the intent to terrorize, or with reckless disregard for the risk of causing terror to, another person?

2. Whether the evidence was insufficient to support the convictions for harassment under 18 Pa.C.S.[A.] § 2709(a)(4) where the Commonwealth failed to prove beyond a reasonable doubt that (1) [Barchfeld] intended to harass, annoy or alarm any or all of the victims and/or (2)

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

any communication to/about any/all of the victims was lewd, lascivious, threatening or obscene?

Brief for Appellant at 3.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

**_Commonwealth v. Talbert_**, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted).

In his first claim, Barchfeld contends that the evidence was insufficient to support his terroristic threats conviction. Brief for Appellant at 17. Barchfeld argues that his threat to shoot Rosing did not qualify as a terroristic threat under the circumstances of this case. **_Id._** at 18-19. Barchfeld asserts that the threat was made in response to Rosing hanging up

the phone on Barchfeld, and should be considered a spur-of-the-moment threat. *Id.* at 18-19, 20; *see also id.* at 19 (noting that the evidence also demonstrates that Barchfeld was banned from school board meetings, and that Schmotzer made a false statement about him).

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa. Super. 2016) (citation omitted). "[T]he harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Id.* (citation omitted). This statute is not intended to penalize those spur-of-the-moment threats that arise out of anger in the course of a dispute. *Commonwealth v. Tizer*, 684 A.2d 597, 600 (Pa. Super. 1996). When considering whether a threat was made in the spur-of-the-moment, we "must consider the totality of the circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." *Commonwealth v. Reynolds*, 835 A.2d 720, 739 (Pa. Super. 2003).

Here, viewing the above-stated evidence in the light most favorable to the Commonwealth, the record does not support a finding that Barchfeld's

statement constituted a "spur of the moment threat." Indeed, in response to Rosing's question as to whether he was threatening Rosing, Barchfeld stated "Yes, I'm going to shoot you, I'm going to blow you away." N.T., 12/19/16, at 33; *see also id.* at 41 (wherein Rosing's wife corroborated Rosing's testimony). Rosing testified that Barchfeld's statement scared him. *Id.* at 34. Rosing's testimony is sufficient to support Barchfeld's terroristic threats conviction. *See Commonwealth v. Kelley*, 664 A.2d 123, 128 (Pa. Super. 1995) (concluding that the defendant's threats to "kill" the victim demonstrated that the defendant intended to terrorize the victim); *see also Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa. Super. 2000) (noting that "appellant clearly spent a long time reflecting upon his frustrations, and his threats cannot be characterized as less than premeditated and deliberate. Their breadth and the sweeping choice of those threatened are not reflective of any 'spur-of-the-moment' frustration.").

In his second claim, Barchfeld contends that the evidence was insufficient to support his harassment convictions. Brief for Appellant at 20-25. Barchfeld argues that he did not intend to harass, annoy, or alarm any of the victims with the phone calls. *Id.* at 21; *see also id.* at 22 (arguing that while Barchfeld's actions of making phone calls and leaving messages was misguided and unwise, he did not act with the intent to harass, annoy, or alarm). Barchfeld points out that his use of the "F-word" and "assertion of his Second Amendment rights" were not obscene. *Id.* at 23; *see also id.*

at 25 (noting that the use of vulgar words does not satisfy the requirements of section 2709(a)(4)).

With regard to Schmotzer, Barchfeld asserts that his call to Schmotzer on the morning of May 23, 2014, was the first call to Schmotzer's home, and there was no history of calls to harass, annoy, or alarm Schmotzer. *Id.*[2] With regard to Rosing, Barchfeld claims that he called Rosing three times only because Rosing hung up the phone on the first two calls. *Id.* at 21-22. Barchfeld again argues that his threats to Rosing were made in the spur-of-the-moment. *Id.* at 24. With regard to Pantuso and Sue, Barchfeld asserts that his recorded voicemail was spoken in a calm, monotone voice, which was not annoying. *Id.* at 22.

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person … communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]" 18 Pa.C.S.A. § 2709(a)(4). To establish the intent to harass in phone-call related cases, "a determination of whether the caller knew or should have known that the effect of the call

---

[2] Barchfeld also argues that he called Schmotzer a second time on May 23, 2014, "only after [] Schmotzer took action against [Barchfeld] by having a government employee (police officer) carrying (but not using/brandishing) a firearm to further prevent [Barchfeld] from speaking to school board members." Brief for Appellant at 21. Contrary to Barchfeld's argument, a review of the record indicates that Sgt. Gagorik spoke with Barchfeld on the phone on May 23, 2014. N.T., 12/19/16, at 26-27. However, an officer spoke to Barchfeld in person on May 24, 2014. *Id.* at 48-49.

would be to harass the listener" is required. **Commonwealth v. Duda**, 831 A.2d 728, 731 (Pa. Super. 2003). "The use of obscene language and threats of death satisfy this requirement." **Id.** Further, "[a]n intent to harass may be inferred from the totality of the circumstances." **Commonwealth v. Cox**, 72 A.3d 719, 721 (Pa. Super. 2013).

The trial court found that Barchfeld's "conduct in contacting the victims, School Board members and their wives, at their homes, early in the morning and late in the evening, with no legitimate purpose, using vulgar and offensive language and making both direct and indirect threats against them, was intended to harass, annoy and/or alarm these victims." Here, the above-mentioned evidence, which the fact-finder was free to believe, permits the inference that Barchfeld's use of profanity and threats were made with the intent to harass, annoy, or alarm the various victims. Thus, the totality of the circumstances demonstrate that the evidence was sufficient to support Barchfeld's harassment convictions.

Judgment of sentence affirmed. Application for Leave to Withdraw as Counsel denied.[3]

---

[3] We note that Barchfeld's counsel filed the Application to withdraw as counsel after filing a merits brief. Thus, the requirements of **Anders v. California**, 386 U.S. 738 (1967), were not applicable to this case. Because of this procedural posture, we deny counsel's Application without prejudice to raise it following the disposition of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/18/2018